UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DAVID T. GILCHRIST and LEANNE L. GILCHRIST,<br><br>Plaintiffs,<br><br>v.<br><br>BAYVIEW LOAN SERVICING, LLC and QUALITY LOAN SERVICE CORP. OF WASHINGTON,<br><br>Defendants. | CASE NO. 3:16-cv-05788-RJB<br><br>ORDER ON QUALITY LOAN SERVICE CORP. OF WASHINGTON'S SECOND MOTION FOR SUMMARY JUDGMENT |

THIS MATTER comes before the Court on Defendant Quality Loan Service Corp. of Washington's Second Motion for Summary Judgment. Dkt. 27. The Court has considered the motion, the briefing filed in opposition and support of the motion, and the remainder of the file herein.

BACKGROUND

**A. Procedural history.**

Plaintiffs filed this case on September 15, 2016, in connection with non-judicial foreclosure proceedings initiated against real property located at 457 211st Ave., Longview, Washington ("the Subject Property"). Dkt. 1. Following the filing of an Amended Complaint, on

September 28, 2016, Defendant Quality Loan sought dismissal of some, not all, claims in a Motion for Summary Judgment. Dkts. 5, 7. The Court granted the motion in part, dismissing claims against Defendant Quality for breach of contract and violations of the Fair Debt Collection Procedures Act (FDCPA). Dkt. 23.

On November 1, 2016, Defendant Bayview Loan Servicing, LLC filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), which the Court granted in part. Dkt. 26.

On December 14, 2016, Defendant Quality Loan filed this Second Motion for Summary Judgment. Dkt. 27. Plaintiffs filed their Response on January 27, 2017. Dkt. 38. Defendant Quality Loan filed its Reply on January 30, 2017. Dkt. 40.

**B. Facts.**

Most of the relevant facts are not in dispute.

On January 23, 2009, Plaintiffs executed a Promissory Note for $130,000 and promised to make payments to the Lender, "Mann Mortgage, LLC dba Life Mortgage," to purchase the Subject Property. Dkt. 1-1 at 3, 4. The Promissory Note provides that Plaintiffs "understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" Dkt. 1-1 at 3.

That same day, Plaintiffs, as "Borrower," signed a Deed of Trust securing interest in the Subject Property in "Mann Mortgage, LLC dba Life Mortgage" for repayment of the Promissory Note. Dkt. 1-2 at 3-16. The Deed of Trust provides: "Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale" the Subject Property. Dkt. 1-2 at 5. "Cowlitz County Title Company" was named as the Trustee. Dkt. 1-2 at 4. Mortgage Electronic Registration System ("MERS") was identified as the "beneficiary" of the Deed of Trust "solely as nominee for Lender and Lender's successors and assigns, and the successors and assigns of MERS." Dkt. 1-2

at 4. The Deed of Trust allows for the "[Promissory] Note or a partial interest under the Note (together with this Security Instrument) [to] be sold one or more times without prior notice to Borrower." Dkt. 1-2 at 14. It further provides that "[a] sale might result in a change in the entity (known as the 'Loan Servicer') that collects Periodic Payments due under the Note and this Security Instrument, and Applicable Law" and that the "Lender may from time to time appoint a successor trustee," who "shall succeed to all the title, power and duties conferred upon Trustee herein." *Id*. at 15.

In March of 2013, Plaintiffs stopped making payments on the loan. Dkt. 28-1 at 3.

On June 18, 2013, MERS, as nominee for "Mann Mortgage LLC dba Life Mortgage," assigned and transferred to "Bank of America NA, and its successors and assigns, all its right title and interest in" Plaintiffs' Deed of Trust. Dkt. 20-5 at 25. This Assignment of the Deed of Trust was recorded on July 3, 2013. Dkt. 20-5 at 25. Plaintiffs dispute the legitimacy of this assignment.

On November 20, 2013, Bank of America N.A. issued to Plaintiffs a Notice of Intent to Accelerate. Dkt. 28-1 at 3. The correspondence informed Plaintiffs that "Bank of America, N.A. services the home loan . . . on behalf of the holder of the promissory note (the "Noteholder")." Dkt. 28-1 at 3.

On July 10, 2015, Bank of America N.A. executed a "Declaration of Beneficiary Pursuant to RCW 61.24.030," which declared Bank of America N.A. "the beneficiary . . . and actual holder of the promissory note or other obligation secured by the deed of trust" regarding the subject property. Dkt. 20-5 at 31. On August 7, 2015, Bank of America N.A. "grant[ed], [sold], assign[ed], transfer[red] and convey[ed]" to Bayview Loan "all beneficial interest under"

the Deed of Trust "together with the note(s) and obligations therein described and the money due[.]" Dkt. 1-7 at 2. The Assignment of Deed of Trust was recorded on August 25, 2015. *Id.*

On August 13, 2015, Bayview Loan appointed Defendant Quality Loan as the successor trustee under the Deed of Trust. Dkt. 1-5 at 2, 3. The Appointment of Successor Trustee was recorded on November 2, 2015. *Id.* Defendant Quality Loan sent Plaintiffs a Notice of Default on November 10, 2015. Dkt. 1-4 at 2-8.

On December 9, 2015, Bayview Loan executed a "Declaration of Beneficiary (Pursuant to RCW 61.24.030 (SB5810))," declaring that it "is the actual holder of the Promissory Note, dated 1/21/2009, in the principal amount of $130,000, which is secured by the Deed of Trust recorded in Cowlitz County under Auditor's File No. 3385178." Dkt. 20-9, at 12, 16.

On June 3, 2016, Defendant Quality Loan recorded, in Cowlitz County, a "Notice of Trustee's Sale" regarding the Subject Property, which was to be sold on October 7, 2016. Dkt. 1-3. Plaintiff filed this case on September 15, 2016. Dkt. 1.

**C. Remaining claims against Defendant Quality Loan.**

Construing the Amended Complaint in favor of Plaintiffs, other than the FDCPA claim (Count I) and breach of contract claim (Count VII), which were dismissed (Dkt. 23), the following claims remain as to Defendant Quality Loan:

- Infliction of emotional distress (Count II, ¶¶222, 223)
- Violations of the Deed of Trust Act, RCW 61.24, and related request for injunctive relief (Count VIII[1], ¶¶248-255)

---

[1] Unlike Count I-Count VII, Count VIII-Count XI are not alleged with corresponding roman numerals, but given the formatting, Count VIII-Count XI will be referenced as though the numbering extended to all counts, in sequence.

ORDER ON QUALITY LOAN SERVICE CORP.
OF WASHINGTON'S SECOND MOTION FOR
SUMMARY JUDGMENT- 4

1
- Violations of the Washington Consumer Protection Act (Count IX, ¶¶256-263)

2
- Libel/defamation of title (Count X, ¶¶264-267)

3
- Violations of Washington Criminal Profiteering Act, RCW 9A.82 *et seq*. (Count

4
   XI, ¶¶268-272)

5
## SUMMARY JUDGMENT STANDARD

6  Summary judgment is proper only if the pleadings, the discovery and disclosure materials
7  on file, and any affidavits show that there is no genuine issue as to any material fact and that the
8  movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is
9  entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient
10 showing on an essential element of a claim in the case on which the nonmoving party has the
11 burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of
12 fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for
13 the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586
14 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some
15 metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a
16 material fact exists if there is sufficient evidence supporting the claimed factual dispute,
17 requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty*
18 *Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*
19 *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

20
## DISCUSSION

21  The organization and lack of citations to the record in Plaintiffs' Response (Dkt. 38)
22  presented the Court with a challenge, because many arguments raised did not identify issues of

23

24

fact for specific claims. Nonetheless, the Court has endeavored to construe the pleadings in Plaintiffs' favor.

At the outset, two arguments raised by Plaintiffs should be dispensed with because they effect multiple or all claims. Plaintiffs argue that the declaration of Sierra Herbert-West (Dkt. 28) should not be considered because the witness was not included with initial disclosures under Fed. R. Civ. P. 26(a)(1). Dkt. 38 at 2, 12, 13. This argument is not persuasive, because Sierra Herbert-West is relied upon as a records custodian for Defendant Quality Loan, not as a witness with personal knowledge, and the records kept by Defendant Quality are found elsewhere in the record. Even if Defendant Quality Loan did not formally disclose Sierra Herbert-West as a witness, Defendant Quality Loan did not ambush Plaintiffs by relying on their records custodian. In fact, Defendant Quality Loan relied upon Sierra Herbert-West from as early as two weeks after the case was filed, when Defendant Quality Loan filed its first Motion for Summary Judgment (Dkts. 7, 8). Plaintiffs did not object to the custodian of records witness then and have not sought to depose the witness.

Plaintiffs also spend much of their briefing arguing that Defendant Quality Loan acted without authority to pursue nonjudicial foreclosure. According to Plaintiffs, "the successive transfers of interest from MERS, Inc. to Bank of America, N.A. and then . . . to Bayview are predicated on a fallacy. . . that MERS, Inc. had an interest in any sort in the Plaintiffs' loan." Dkt. 38 at 10. Plaintiffs contend that MERS, Inc. did not have an interest because "the transfer of interest from MERS, Inc. to Bank of America, N.A. was invalid . . . thereby corrupting the transfer . . . to Bayview . . . causing a wrongful foreclosure[.]" Dkt. 38 at 10, 11. The record provides no support for this theory, and Plaintiffs have offered none. The Court has twice

rejected this theory, so it need not be discussed at length. Dkt. 23 at 9, 10; Dkt. 26 at 9, ln. 20-22, at 10, ln. 7-10.

(1) <u>Infliction of emotional distress (Count II, ¶¶222, 223)</u>

The elements of a claim of intentional infliction of emotional distress, also known as outrage, are: 1) extreme and outrageous conduct that is 2) intentional or wantonly reckless that 3) causes the plaintiff severe emotional distress. *Dicomes v. State*, 113 Wn.2d 612, 630 (1989). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Grimsby v. Samson*, 85 Wn.2d 52, 59 (1975). The tort "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id*. at 59. Dismissal of a claim of outrage is appropriate if reasonable minds could not differ as to whether the conduct was extreme and outrageous. *Dicomes*, at 630; *Guffey v. State*, 103 Wn.2d 144, 146 (1984).

Plaintiffs' Response (Dkt. 38) makes no mention of this claim, so the Court is left to consider whether there is an issue of material fact to be found in the record. The Amended Complaint may provide insight into Plaintiffs' theory. The Amended Complaint alleges that Defendant Quality Loan, "by violating the FDCPA . . . inflicted upon the Plaintiffs emotional damage[.]" Dkt. 5 at ¶223. The Amended Complaint then enumerates harm to Plaintiffs, such as the "unnecessary embarrassment . . . when Plaintiff's [*sic*] co-worker stated that he saw the Plaintiffs' house in the paper listed under a Trustee's sale notice" and "the Notice of Trustee's Sale . . . [was] taped to the house for all the neighborhood to see and talk about[.]" *Id*.

As a threshold matter, summary judgment is warranted because the claim depends on violations of the FDCPA as the basis for the inflicted emotional distress, and the FDCPA claim (Count I) was previously dismissed. *See* Dkt. 23. The FDCPA claim presupposes that Defendant

1  Quality Loans acted without authority to conduct its nonjudicial foreclosure activities, but the
2  record shows only the contrary. For example, Defendant Quality Loan issued the Notice of
3  Default and Notice of Sale consistent with their obligations under the Deed of Trust Act, which
4  does not constitute outrageous conduct. Dkt 1-3; Dkt. 20-9 at 20-26. *See* RCW 61.24.030, .040.
5        Defendant Quality Loan is entitled to summary judgment on this claim, which should be
6  dismissed.
7        (2) <u>Violations of the Deed of Trust Act, RCW 61.24 and related request for injunctive
8           relief (Count VIII[2], ¶¶248-255)</u>
9        As this Court has previously recognized, under Washington law there is no cause of
10 action for damages under the Deed of Trust Act without the completion of a foreclosure sale.
11 *Frias v. Asset Foreclosure Servs. Inc.*, 181 Wn.2d 412, 422 (2014). Defendant Quality Loan
12 represents that there has not yet been a foreclosure sale, Dkt. 27 at 6, and neither Plaintiff's
13 Response (Dkt. 38) nor a review of the record shows to the contrary.
14       The Deed of Trust Act allows for injunctive relief to restrain a foreclosure sale, but it also
15 requires payment "to the clerk of the court sums that would be due on the obligation secured by
16 the deed of trust if the deed of trust was not being foreclosed." RCW 61.24.130(1). There is no
17 showing that Plaintiffs have made such a deposit, so injunctive relief is not warranted.
18       Defendant Quality Loan is entitled to summary judgment on this claim, which should be
19 dismissed.
20       (3) <u>Violations of the Washington Consumer Protection Act (Count IX, ¶¶256-263)</u>

---

To prevail on a CPA claim, the plaintiff must show an (1) unfair or deceptive act or practice that (2) occurred in trade or commerce, (3) impacts the public interest, (4) caused an injury to the plaintiff, and (5) is causally linked to the unfair or deceptive act. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 780 (1986). "[A] claim under the Washington CPA may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *Klem v. Wash. Mut. Bank*, 176 Wn. 2d 771, 787 (2013).

Plaintiffs' Response (Dkt. 38) helpfully points to 3 alleged CPA violations and corresponding portions of the record:

> 1. 1 violation of the consumer protection act involving a false and misleading statement whereby Quality Loan told the Plaintiffs they were the acting trustee when in fact they were not. [See Amended Complaint, ¶ 116, ¶ 123, ¶ 130] [See Exhibits J & K]
>
> 2. 1 violation of the consumer protection act involving a false and misleading statement whereby Quality Loan, after admitting that they had not yet been appointed as Successor Trustee under the Gilchrist Deed of Trust, identified the Plaintiffs' property in the same letter with a trustee number, thereby misleading the Plaintiffs. [See Amended Complaint, ¶ 130, ¶ 132, ¶ 133,] [See also attached Exhibit K]
>
> 3. 1 violation of the consumer protection act involving a false and misleading statement whereby Quality Loan stated in their Notice of Trustees Sale that MERS, Inc. was the beneficiary when their Notice of Foreclosure is identifying Bayview as the beneficiary. Plaintiffs argue that the identification of two beneficiaries in two separate documents, served together on the same day is misleading for the average consumer and was misleading to the Plaintiffs at the time. [See Exhibits C and F of the Amended Complaint]

Dkt. 38 at 4, 5.

Plaintiffs' first theory appears to be based on the flawed chain of title theory previously rejected by this Court and need not be addressed at length.

Plaintiffs' second theory cites to "Exhibit K" (Dkt. 38-4), which is a letter from Defendant Quality Loan in response to a letter from Plaintiffs. Defendant Quality Loan's letter states that "[a]lthough [Defendant Quality Loan] is preparing to advance a non-judicial foreclosure . . . [Defendant Quality Loan] has made no attempts to collect a debt[.]" Dkt. 38-4 at 1. The letter clarifies Defendant Quality Loan's role, stating that it "is neither the Beneficiary nor the Servicer of your loan" and that it "has not yet issued a Notice of Default and has not yet been appointed Successor Trustee[.]" *Id*.

Based on careful consideration of Defendant Quality Loan's letter, it is unclear to the Court how the letter could be construed as misleading to Plaintiffs. Plaintiffs argue that Defendant Quality Loan misled Plaintiffs by "admitting they had not yet been appointed as Successor Trustee . . . [but] identif[ing] the Plaintiffs' property in the same letter with a trustee number[.]" Dkt. 38 at 4. The letter does not create as issue of fact as to "false or misleading" conduct by Defendant Quality Loan, but instead, with clarity and repetition, distinguishes Defendant Quality Loan's role from other entities involved in this matter. *See* Dkt. 38-4 at 1 (e.g.- "Quality . . . has not yet been appointed Sucessor Trustee" and "Quality must be appointed as Trustee and will also confirm the Beneficiary seeking to advance the foreclosure is the actual holder").

Plaintiffs' third theory is that the Notice of Trustee's Sale, with MERS, Inc. as beneficiary, conflicts with Notice of Foreclosure, with Bayview Loan as beneficiary. Dkt. 38 at 4. *See* Dkt. 1-3 at 2. The Notice of Trustee's Sale states:

> NOTICE IS HEREBY GIVEN THAT Quality Loan Service Corp. of Washington, the undersigned Trustee, will . . . sell at public auction [the Subject Property] which is subject to that certain Deed of Trust dated 1/29/2009 . . . under 3385178 . . . to COWLITZ COUNTY TITLE COMPANY, as Trustee, to secure an obligation in favor of [MERS, Inc.] AS NOMINEE FOR MANN MORTGAGE . . . as Beneficiary, the beneficial interest in which was assigned by [MERS, Inc.] AS NOMINEE FOR MANN

MORTGAGE . . . (or by its successors-in-interest and/or assigns, if any) to Bayview Loan Servicing, LLC.

Dkt. 1-3 at 2.

The Notice of Trustee's Sale expressly names Bayview Loan as beneficiary, so there is no conflict with the Notice of Foreclosure. *See* Dkt. 1-6 at 2. Plaintiffs may perhaps be confused by an administrative heading above the body text of the notice, which refers to "[MERS, Inc.] AS NOMINEE FOR MANN MORTGAGE," but given the other administrative items listed, e.g., Title Order No. and Deed of Trust Instrument No., as well as the body text of the notice, which narrates the chain of title, it is clear that the reference to MERS, Inc. in the administrative heading should be read to refer to the original instrument from 2009.

The third theory ultimately fails because it relies on a misreading of the Notice of Trustee's Sale. Because there is no conflict between Notice of Trustee's Sale and the Notice of Foreclosure, there is no issue of fact as to an unfair or deceptive practice. The third theory also fails because the record does not show—and Plaintiffs do not point to—any harm that resulted from confusion about whether MERS, Inc. or Bayview Loan was the beneficiary.

Beyond the 3 alleged CPA violations found in Plaintiffs' Response, the Amended Complaint also alleges per se CPA violations from violations of the Deed of Trust Act and the FDCPA, but those claims have been dismissed.

Defendant Quality Loan is entitled to summary judgment on this claim, which should be dismissed.

(4) <u>Libel/defamation of title (Count X, ¶¶264-267)</u>

"The necessary elements of a slander of title action are that the words: (1) must be false; (2) must be maliciously published; (3) must be spoken with reference to some pending sale or purchase of the property; (4) must result in a pecuniary loss or injury to the plaintiff; and (5)

1  must be such as to defeat the plaintiff's title." *Pay'n Save Corp. v. Eads*, 53 Wn.App. 443 (Div.
2  I, 1989).

3  Plaintiffs' Response (Dkt. 38) makes no mention of this claim, so the Court is left to
4  consider whether there is an issue of material fact to be found in the record. The Amended
5  Complaint articulates Plaintiffs' theory of the claim, alleging that Defendant Quality caused
6  harm to Plaintiffs' reputation through "false and defamatory statements against Plaintiffs and the
7  title to Plaintiffs [*sic*] property," by "recording and publishing the Notice of Trustee's Sale when
8  there was no legal right to do so[.]" Dkt. 5 at ¶265.

9  There is no showing in the record that Defendant Quality's pre-judicial foreclosure
10 "statements," such as the Notice of Trustee's Sale, did not conform with the Deed of Trust Act.
11 The claim also appears to be premised on the assumption, which the Court has previously
12 rejected, that Bayview Loan was not the lawful beneficiary and holder of the Promissory Note
13 (and thus had no right to enlist Defendant Quality as successor trustee under the Deed of Trust).
14 *See* Dkt. 20-8 at 3, 4. Even if Plaintiffs are correct, that Defendant Quality acted without
15 authority to pursue nonjudicial foreclosure, the record is devoid of—and Plaintiffs have not
16 offered—any evidence to suggest that Defendant Quality acted maliciously.

17 Defendant Quality is entitled to summary judgment on this claim, which should be
18 dismissed.

19 (5) <u>Violations of Washington Criminal Profiteering Act, RCW 9A.82 *et seq*. (Count XI,</u>
20 <u>¶¶268-272)</u>

21 The Criminal Profiteering Act provides a civil remedy for "[a] person who sustains injury
22 to his or her person, business, or property by an act of criminal profiteering that is part of a
23 pattern of criminal profiteering activity or by an offense [enumerated by specific statutes]."

24

RCW 9A.82.100(1)(a). "Criminal profiteering" means "any act . . . committed for financial gain, that is chargeable or indictable" under Washington law or other state laws. RCW 9A.82.010.

Plaintiffs' Response (Dkt. 38) makes no mention of this claim or the cited statute, RCW 9A.82, so the Court is left to consider whether there is an issue of material fact to be found in the record. The Amended Complaint does not identify specific state laws by statute that are "chargeable or indictable," but instead alleges the following conduct as violating RCW 9A.82:

> A) Use of deception . . . [to] mislead[] debtors and property owners . . .
> B) Recorded fraudulent and false instruments . . .
> C) Circumvented [Deed of Trust Act] procedures . . . to exert possession and control over real property without valid authority . . . attempting to accomplish theft over real property . . .
> D) Unlawfully charging Plaintiffs unjust fees and interest . . .
> E) Utilizing the provisions of [the Deed of Trust Act] to extort payments from Plaintiffs.
> F) Establishing a means . . . [to] resell unlawfully obtained (stolen) home of Plaintiffs.

Dkt. 5 at ¶269.

Even if one of these listed activities violated the Criminal Profiteering Act, which has not been established, the record does not show that Defendant Quality engaged in any of this conduct. The listed activities appear premised on Defendant Quality's authority to pursue nonjudicial foreclosure, which Plaintiffs have not successfully challenged.

Defendant Quality is entitled to summary judgment on this claim, which should be dismissed.

* * *

THEREFORE, Defendant Quality Loan Service Corp. of Washington's Second Motion for Summary Judgment (Dkt. 27) is GRANTED. The remaining claims against Defendant Quality Loan Service, Corp. of Washington are HEREBY DISMISSED.

IT IS SO ORDERED.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 14th day of February, 2017.

*/s/ Robert J. Bryan*

ROBERT J. BRYAN
United States District Judge

ORDER ON QUALITY LOAN SERVICE CORP. OF WASHINGTON'S SECOND MOTION FOR SUMMARY JUDGMENT- 14